## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) ) ) | Case: 1:11-cv-02276 |
| v. | ) ) | |
| EXELON CORPORATION | ) ) | **FILED** |
| and | ) ) | **MAY 2 3 2012** |
| CONSTELLATION ENERGY GROUP, Inc. | ) ) ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |
| Defendants. | ) ) ) | |

### FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on December 21, 2011, the United States and Defendants, Defendant Exelon Corporation ("Exelon") and Defendant Constellation Energy Group, Inc. ("Constellation"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

1

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made, subject to receipt of necessary regulatory approvals, and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.  JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.  DEFINITIONS

As used in this Final Judgment:

A.      "Acquire" means obtain any interest in any electricity generating facility, including real property, deeded development rights to real property, capital equipment, buildings, or fixtures.

B.      "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest any of the Divestiture Assets or with whom Defendants have entered into definitive contracts to sell any of the Divestiture Assets.

2

C.      "Constellation" means Constellation Energy Group, Inc., a Maryland corporation

headquartered in Baltimore, Maryland, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers,

managers, agents, and employees.

D.      "Control" means have the ability, directly or indirectly, to set the level of, to dispatch, or

to Offer the output of one or more units of an electricity generating facility or to operate

one or more units of an electricity generating facility.

E.       "Divestiture Assets" means the following facilities:  (1) Brandon Shores Power Plant,

2030 Brandon Shores Road, Baltimore, MD 21226; (2) H.A. Wagner Power Plant, 3000

Brandon Shores Road, Baltimore, MD 21226; (3) CP Crane Power Plant, 1001 Carroll

Island Road, Baltimore, MD 21220; and for each of those facilities, all of Defendants'

rights, titles, and interests in any tangible and intangible assets relating to the generation,

dispatch, and offering of electricity at the facility; including the land; buildings; fixtures;

equipment; fixed assets; supplies; personal property; non-consumable inventory on site as

of December 1, 2011; furniture; licenses, permits, and authorizations issued by any

governmental organization relating to the facility (including environmental permits and

all permits from federal or state agencies and all work in progress on permits or studies

undertaken in order to obtain permits); plans for design or redesign of the facility or any

assets at the facility; agreements, leases, commitments, and understandings pertaining to

the facility and its operation; records relating to the facility or its operation, wherever

kept and in whatever form (excluding records of past offers submitted to PJM); all

equipment associated with connecting the facility to PJM (including automatic generation

control equipment); all remote start capability or equipment located on site; and all other

interests, assets, or improvements at the facility customarily used in the generation, dispatch, or offer of electricity from the facility; provided, however, that "Divestiture Assets" shall not include (i) electric and gas distribution or transmission assets located in, or appurtenant to, the boundaries of the facility, or (ii) any communications links between the facility and Defendants, which will be disconnected.  To the extent that any licenses, permits, or authorizations described above are nontransferable, Defendants will use their best efforts to obtain the necessary consent for assignment to the Acquirer or Acquirers of the license, permit, or authorization.

F.     "Exelon" means Exelon Corporation, a Pennsylvania corporation headquartered in Chicago, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers, managers, agents, and employees.

G.     "Exelon/Constellation Transaction" means the merger of Exelon and Constellation that is the subject of the "Agreement and Plan of Merger" between Exelon and Constellation dated April 28, 2011.

H.     "Good Utility Practice" means any of the practices, methods, and acts engaged in or approved by a significant portion of the electric utility industry during the relevant time period, or any of the practices, methods, and acts which, in the exercise of reasonable judgment in light of the facts known at the time the decision is made, could have been expected to accomplish the desired result at a reasonable cost consistent with good business practices, reliability, safety, and expedition.  "Good Utility Practice" is not intended to be limited to the optimum practice, method, or act to the exclusion of all

others, but rather is intended to include acceptable practices, methods, or acts generally accepted in the region.

I.  "Including" means including but not limited to.

J.  "Offer" or "Offers" means an offer to sell energy submitted into the PJM Market pursuant to the version of PJM "Amended and Restated Operating Agreement of PJM Interconnection, LLC," Section 6.4, available at <www.pjm.com>, in effect at the time the offer is made.

K.  "Person" means any natural person, corporation, association, firm, partnership, or other business or legal entity.

L.  "PJM" means PJM Interconnection, LLC, 995 Jefferson Ave., Norristown, PA, 19403.

## III.  APPLICABILITY

A.  This Final Judgment applies to Defendants Exelon and Constellation, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.  If, prior to complying with Section IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their electricity generating facilities in Maryland, Pennsylvania, Delaware, the District of Columbia, New Jersey, or Virginia, or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirers of the Divestiture Assets.

## IV.  DIVESTITURES

A.      Defendants are hereby ordered and directed to divest the Divestiture Assets in a manner

consistent with this Final Judgment to an Acquirer acceptable to the United States, in its

sole discretion.  Defendants shall enter into definitive contracts for sale of the Divestiture

Assets within 150 days after consummation of the Exelon/Constellation Transaction.

Defendants shall use their best efforts to, as expeditiously as possible, (1) enter into these

contracts, and (2) after obtaining the United States' approval of the Acquirers, seek the

necessary approvals of the sale of the Divestiture Assets from regulatory agencies.  The

United States, in its sole discretion, may agree to up to two thirty (30) day extensions of

this time period, not to exceed sixty (60) calendar days in total, and shall notify the Court

in such circumstances.  Defendants shall consummate the contracts for sale no later than

thirty (30) calendar days after receiving, for each Divestiture Asset, the last necessary

regulatory approval required for that Divestiture Asset.

B.      In accomplishing the divesture ordered by this Final Judgment, Defendants promptly

shall make known, by usual and customary means, the availability for sale of the

Divestiture Assets.  Defendants shall inform any person making inquiry regarding a

possible purchase of the Divestiture Assets that they are being divested pursuant to this

Final Judgment and provide such person with a copy of this Final Judgment.  Defendants

shall also offer to furnish to all prospective Acquirers who have been invited to submit

binding bids, subject to customary confidentiality assurances, all information and

documents relating to the Divestiture Assets customarily provided in a due diligence

process except such information subject to the attorney-client privilege or work-product

doctrine.  Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.    Defendants shall provide the Acquirers and the United States the name and most recent contact information (if known) for each individual who is currently, or who, to the best of Defendants' knowledge, has, at any time since July 1, 2011, been stationed at a specific Divestiture Asset or involved in the operation, dispatch, or offering of the output, of that Divestiture Asset to be purchased by the Acquirer to enable the Acquirers to make offers of employment.  Defendants will not interfere with any negotiations by the Acquirers to employ such persons.

D.    Subject to customary confidentiality assurances, Defendants shall permit prospective Acquirers who have been invited to submit binding bids for the Divestiture Assets to have reasonable access to personnel and to make inspection of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.    Defendants agree to preserve the Divestiture Assets in a condition and state of repair at least equal to their condition and state of repair as of the date the Complaint was filed, ordinary wear and tear excepted, and consistent with Good Utility Practice.

F.    Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.    Defendants shall warrant to the Acquirers of the Divestiture Assets that each asset will be operational, consistent with Good Utility Practice, on the date of sale, subject to legal or regulatory restrictions on any of the Divestiture Assets in existence on the date of sale.

H.  Defendants shall warrant to the Acquirers of the Divestiture Assets that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.  Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by the trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirers as part of a viable, ongoing business engaged in the provision of electric generation services.  Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

(1) shall be made to Acquirers that, in the United States' sole judgment, have the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of the provision of electric generation services; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirers and Defendants give Defendants the ability unreasonably to raise the Acquirers' costs, to lower the

Acquirers' efficiency, or otherwise to interfere in the ability of the Acquirers to compete effectively.

## V.  APPOINTMENT OF TRUSTEE

A.     If Defendants have not entered into definitive contracts for sale of the Divestiture Assets within the time specified in Section IV(A), Defendants shall notify the United States of that fact in writing.  Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets, including prosecuting any applications for required regulatory approvals.  Until such time as a trustee is appointed, Defendants shall continue their efforts to effect the sale of the Divestiture Assets as specified in Section IV.

B.     After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets.  The trustee shall have the power and authority to accomplish the divestiture to Acquirers acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestitures.

C.     Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the

United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.      The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred.  After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants, and the trust shall then be terminated.  The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestitures and the speed with which they are accomplished, but timeliness is paramount.

E.      Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture, including their best efforts to effect all necessary regulatory approvals.  The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and assets at the Divestiture Assets, and Defendants shall develop financial and other information relevant to the Divestiture Assets as the trustee may reasonably request, subject to reasonable protection for confidential research, development, or commercial information. Subject to customary confidentiality assurances, Defendants shall permit prospective Acquirers who have been invited to submit binding bids for the Divestiture Assets to have reasonable access to personnel and to make inspection of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning and other permit

documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.     Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

G.     After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

H.     If the trustee either (1) has not entered into definitive contracts for sale of the Divestiture Assets within ninety (90) calendar days after its appointment or (2) has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestitures; (2) the reasons, in the trustee's judgment, why definitive contracts have not been reached or why the required divestitures have not been accomplished; and (3) the trustee's recommendations.  To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The trustee shall at the same time

furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of this Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI.  NOTICE OF PROPOSED DIVESTITURES

A.      Within two (2) business days following execution of a definitive contract for sale of any of the Divestiture Assets, Defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Sections IV or V of this Final Judgment, and submit to the United States a copy of the proposed contract for sale and any other agreements with the Acquirer relating to the Divestiture Assets.  If the trustee is responsible, it shall similarly notify Defendants.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirers, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirers, and any other potential Acquirers.  Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.       Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar

days after the United States has been provided the additional information requested from

Defendants, the proposed Acquirers, any third party, and the trustee, whichever is later,

the United States shall provide written notice to Defendants and the trustee, if there is

one, stating whether or not it objects to the proposed divestiture, provided, however, that

the United States may extend the period for its review up to an additional thirty (30)

calendar days.  If the United States provides written notice that it does not object, the

divestiture may be consummated, subject only to Defendants' limited right to object to

the sale under Section V(C) of this Final Judgment.  Absent written notice that the United

States does not object to the proposed Acquirer or upon objection by the United States, a

divestiture proposed under Section IV or Section V shall not be consummated.  Upon

objection by Defendants under Section V(C), a divestiture proposed under Section V

shall not be consummated unless approved by the Court.

## VII.  FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV

or V of this Final Judgment.

## VIII.  HOLD SEPARATE

Until the divestitures required by this Final Judgment have been accomplished,

Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order

entered by the Court.  Defendants shall take no action that would jeopardize the divestiture

ordered by the Court.

## IX.  AFFIDAVITS

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every

thirty (30) calendar days thereafter until the divestiture has been completed under Section

IV or V, Defendants shall deliver to the United States an affidavit as to the fact and

manner of its compliance with Sections IV or V of this Final Judgment.  Each such

affidavit shall include the name, address, and telephone number of each person who,

during the preceding thirty (30) calendar days, made an offer to acquire, expressed an

interest in acquiring, entered into negotiations to acquire, or was contacted or made an

inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail

each contact with any such person during that period.  Each such affidavit shall also

include a description of the efforts Defendants have taken to solicit buyers for the

Divestiture Assets and to provide required information to prospective Acquirers,

including the limitations, if any, on such information.  Assuming the information set forth

in the affidavit is true and complete, any objection by the United States to information

provided by Defendants, including limitation on information, shall be made within

fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants

shall deliver to the United States an affidavit that describes in reasonable detail all actions

Defendants have taken and all steps Defendants have implemented on an ongoing basis to

comply with Section VIII of this Final Judgment. Defendants shall deliver to the United

States an affidavit describing any changes to the efforts and actions outlined in

Defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented..

C.   Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

A.   For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice Antitrust Division, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

1.   Access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

2.   To interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

15

B.      Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.  NO REACQUISITION

Defendants may not acquire or control any of the Divestiture Assets during the term of this Final Judgment.

## XII.  RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to the

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## XIII.  EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment shall expire ten (10) years from

the date of its entry.

## XIV.  PUBLIC INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and

Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final

Judgment, the Competitive Impact Statement, and any comments thereon and the United States's

responses to comments.  Based upon the record before the Court, which includes the Competitive

Impact Statement and any comments and response to comments filed with the Court, entry of

this Final Judgment is in the public interest.

Dated: _5/22/12_

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

_____
United States District Judge